# IN THE UNITED STATES COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTINA STOLTZFUS** : <br> **Plaintiff,** : <br> : <br> **v.** : <br> : <br> **NANCY A. BERRYHILL,** : <br> **Acting Commissioner of Social Security,** : <br> **Defendant.** : | **CIVIL ACTION NO. 16-6308** |

## MEMORANDUM OPINION

**Rufe, J.**                                                                           **April 26, 2019**

      Plaintiff Christina Stoltzfus filed this action requesting judicial review of the final decision of the Acting Commissioner of the Social Security Administration denying her claim for Disability Insurance Benefits ("DIB"). Plaintiff seeks reversal of the Commissioner's decision, arguing that the Administrative Law Judge's ("ALJ") determination that she is not disabled was not adequately explained or supported by substantial evidence. The Commissioner argues that the ALJ's determination was supported by substantial evidence and should be upheld.

      The Court referred this case to United States Magistrate Judge David R. Strawbridge, who has issued a Report and Recommendation ("R&R") that the Commissioner's decision be affirmed. Plaintiff has filed objections to the R&R, to which the Commissioner has not responded. Upon this Court's careful and independent consideration of the administrative record, the parties' submissions, and the applicable law, the Court will remand this case for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

      The R&R presents an exhaustive review of the procedural history, factual background, evidence, and the most recent ALJ decision. Plaintiff makes no objection to this portion of the R&R, and the Court hereby adopts and incorporates parts I–III of the R&R.

Plaintiff, at age 38, filed an application for DIB on May 22, 2013, alleging a disability onset date of March 1, 2013. She alleged that she was disabled due to degenerative disc disease, severe migraines, depression, anxiety, cognitive loss, and numerous injuries to her back, knee, foot, ribs, and right wrist.[1] She initially injured herself in a horseback riding accident in June 2011, and then, in October 2012, these injuries were exacerbated in a car accident. Plaintiff experienced mental health issues that stemmed from these accidents and began treatment at Alternative Counseling Services, where she was given the provisional diagnosis of opioid dependence, major depressive disorder, and panic disorder with agoraphobia.[2] At the time of the ALJ's decision, she was receiving pain-relief treatment, including back and knee injections, and was seeing a therapist and psychiatrist regularly.[3]

After Plaintiff's original application from 2013 was denied, an administrative hearing was held on June 2, 2015, and the ALJ determined that Plaintiff was not disabled for purposes of receiving DIB. At the hearing, Plaintiff testified that she has pain in her neck, back, and shoulders, that she generally cannot get out of bed three or four days a week,[4] and that she can only sit for about 10 to 15 minutes before she needs to move around due to pain.[5] She stated that on good days, after she completes a household chore, such as laundry, she has to lie down due to the pain in her back and that, generally, she spends "quite a bit" of the day lying down.[6]

---

[1] R. 164; R&R [Doc. No. 12] at 2.

[2] R. 424.

[3] R. 293-302, 328-34, 359-65, 375-82, 416-18, 429.

[4] R. 63.

[5] R. 50.

[6] R. 52.

In consideration of Plaintiff's symptoms and the opinions of several medical professionals, including Dr. Brian Pierson, Dr. Kenan Aksu, and Dr. Julia Loytsker-Borish,[7] the ALJ found that Plaintiff could not perform her past work but had the residual functioning capacity ("RFC") to perform:

> "[S]edentary work as defined in 20 CFR 404.1567(a) except she can occasionally climb ramps/stairs, bend, balance, stoop, kneel, crouch and crawl; with no climbing of ladders/ropes/scaffolds. The claimant is limited to frequent handling and feeling with the right extremity; and requires a brace. The claimant can have no exposure to vibration, unprotected heights, dangerous machinery and uneven surfaces. Additionally, the claimant can have no job where alcohol is served, produced or manufactured. The claimant is limited to simple, routine tasks involving no more than simple, short instructions and simple, work-related decisions with few workplace changes (unskilled work). The claimant is unable to work at production rate or pace (no fast pace or quota-production standards); can have no interaction with the public, and only occasional interaction with co-workers and supervisors.[8]

The ALJ found that Plaintiff is not disabled because, according to the vocational expert, if limited to a range of sedentary, unskilled work with environmental and social limitations, she could perform the jobs of dowel inspector, table worker, and final assembler.[9]

The Appeals Council denied Plaintiff's request for review on October 18, 2016, and Plaintiff then filed an action in this Court. Plaintiff's objections to the R&R are the same as her initial claims concerning whether the ALJ's decision was supported by substantial evidence. Specifically, Plaintiff argues that the ALJ rejected or ignored evidence without reasonable explanation from the following sources: (1) medical opinion evidence from Dr. Loytsker-Borish and Dr. Aksu, (2) Plaintiff's testimony, and (3) statements of lay fact witnesses.

---

[7] Dr. Pierson and Dr. Aksu treat Plaintiff for pain management, and Dr. Loytsker-Borish is a state examiner and clinical psychologist who evaluated Stoltzfus on July 31, 2013.

[8] R. 21-22.

[9] R. 26-27.

## II. STANDARD OF REVIEW

The Social Security Act ("SSA") provides for judicial review by a district court of any "final decision of the Commissioner of Social Security" in a disability proceeding.[10] Upon review, a district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[11] The Commissioner's finding "as to any fact, is supported by substantial evidence, shall be conclusive."[12] Accordingly, the Court's scope of review is limited to a plenary review of all legal issues and a determination of whether the ALJ's findings of fact are supported by substantial evidence.[13]

"Substantial evidence" refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14] The amount required is "more than a mere scintilla," but less than a preponderance of the evidence.[15] If the ALJ's factual findings were based on the correct legal standards and were supported by substantial evidence, the district court is bound by them, "even if [such court] would have decided the factual inquiry differently."[16] The substantial evidence standard is "deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence."[17]

---

[10] 42. U.S.C. § 405(g).

[11] *Id.*

[12] *Id.*

[13] *Schaudeck v. Comm'r of Social Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

[14] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).

[15] *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

[16] *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

[17] *Schaudeck*, 181 F.3d at 431.

Finally, in considering whether to approve the R&R of a magistrate judge, a district court must review *de novo* those portions of the R&R to which a party has objected.[18] The district court may, in its discretion, "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[19]

### III. SOCIAL SECURITY LAW

An ALJ reviewing an application for disability benefits must employ a five-step process as established by the SSA.[20] At step one, the ALJ must decide whether the applicant is engaged in substantial gainful activity. If she is, the claim is denied.[21] If the applicant is not, then the ALJ must determine at step two whether the applicant has a "severe impairment" that significantly limits her physical or mental ability to work.[22] If the applicant suffers from such an impairment, the ALJ must decide at step three whether the impairment meets the criteria for any of the impairments conclusively presumed to be disabilities, which are listed in Part 404, Subpart P, Appendix 1, or whether she has an equivalently debilitating medical condition.[23] If the applicant does not suffer from such an impairment, the ALJ must decide at step four whether the applicant has the RFC to perform past relevant work.[24] If the applicant does not have the RFC to perform past work, the burden shifts to the ALJ at step five to establish that the applicant has the RFC to

---

[18] 28 U.S.C. § 636(b)(1).

[19] *Id.*

[20] 20 C.F.R. § 404.1520; *see also Sykes v. Apfel*, 228 F.3d 259, 262–63 (3d Cir. 2000).

[21] 20 C.F.R. §§ 404.1520(b), 416.920(b); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

[22] 20 C.F.R. §§ 404.1520(c); 416.920(d).

[23] *See* 20 C.F.R. §§ 404.1520(d); 416.920(d).

[24] 20 C.F.R. §§ 404.1520(e); 416.920(e).

perform other work that exists in the national economy.[25] If the ALJ cannot demonstrate that the applicant has the RFC to perform existing work, the ALJ must find the applicant to be disabled.

## IV. DISCUSSION

Plaintiff argues that the ALJ's decision at step five—that Plaintiff could perform work existing in significant numbers in the national economy—was not supported by substantial evidence. Specifically, Plaintiff objects to the R&R's determination that the ALJ adequately explained his decision to reject or give little weight to the medical opinions of Dr. Loytsker-Borish and Dr. Aksu, Plaintiff's testimony, and the lay witness statements.

### A. ALJ's Rejection of Medical Opinion Evidence

#### 1. Dr. Loytsker-Borish's Evaluation

Dr. Julia Loytsker-Borish, Psy.D., is a state examiner who conducted a psychological evaluation of Plaintiff on July 31, 2013.[26] As part of her medical opinion, Dr. Loytsker-Borish concluded that given Plaintiff's difficulties focusing and slow mental pace, she "is not likely to be able to sustain attention, concentration, or pace sufficiently well to perform satisfactorily in an 8-hour workday/40-hour work week."[27] The ALJ gave this conclusion "little weight" because it was "not consistent with the claimant's history of mental health treatment or objective findings" and "no physician has indicated the claimant has more than moderate limitations in any domain of mental functioning that would indicate she could not work a full-time schedule."[28]

Plaintiff objects to the ALJ's assessment of Dr. Loytsker-Borish's opinion, pointing out that the ALJ found her opinion to be consistent with Dr. Banks's opinion, which the ALJ

---

[25] *Id.*

[26] *See* R. 309-18.

[27] R. 314.

[28] R. 25.

6

afforded "great weight." Plaintiff contends that the ALJ could not logically determine that the two doctors' opinions were consistent but then accept one and reject the other.[29]

Plaintiff's argument mischaracterizes the ALJ's assessment of these two opinions. The ALJ did not reject Dr. Loytsker-Borish's opinions regarding Plaintiff's mental symptoms, which are largely consistent with Dr. Banks's opinions; rather, the ALJ rejected Dr. Loytsker-Borish's ultimate conclusion that Plaintiff's issues with concentration would prevent her from working a full work-week.[30] Indeed, the RFC incorporated many of Dr. Loytsker-Borish's opinions that she shared with Dr. Banks, such as the opinion that Plaintiff has moderate limitations in her ability to understand, remember, carry out, and make judgments on complex instructions and work-related decisions, but only "mild" limitations where instructions and work-related decisions are simple,[31] thus limiting Plaintiff to "simple, routine tasks involving no more than simple, short instructions and simple, work-related decisions with few workplace changes."[32]

The R&R determined that Dr. Loytsker-Borish's opinion that Plaintiff has "only mild limitations in her ability to understand, remember, and carry out simple instructions" tempers the opinion that Plaintiff cannot work due to her limitations in "concentration, persistence, or

---

[29] Pl.'s Obj. to R&R [Doc. No. 13] at 2.

[30] Dr. Banks and Dr. Loytsker-Borish have similar assessments of Plaintiff's symptoms. For example, both found her to have "moderate" limitations in understanding detailed instructions but only mild limitations in carrying out simple instructions. *See* R. 85, 316-17. Both found that Plaintiff had some limitations interacting with others, but such limitations would not prevent her from working. *See* R. 86, 317. Both doctors found her to have some limitations responding to work situations and changes in routine work setting, but that this would not prevent her from working. *See* R. 86, 317 (Dr. Banks found she had "moderate" limitations responding to changes in work setting, but that she can "adapt to routine changes without special supervision"; Dr. Loytsker-Borish found she had only mild limitations in this area).

The difference in these assessments was in their ultimate conclusion: Dr. Banks found that Plaintiff's "limitations resulting from the impairments do not preclude the claimant from performing the basic mental demands of competitive work on a sustained basis," while Dr. Loytsker-Borish concluded that Plaintiff would not "be able to sustain attention, concentration, or pace sufficiently to perform satisfactorily in an 8-hour workday/40-hour work week." R. 86, 314.

[31] R. 316.

[32] R. 22.

pace."[33] Plaintiff objects to this determination by the R&R and argues that this inconsistency is "illusory," as there is "more to concentration, persistence, or pace than the ability to follow simple instructions."[34] Plaintiff is correct that only mild limitations in following simple instruction would not, alone, provide adequate support for the rejection of Dr. Loytsker-Borish's opinion that Plaintiff's limitations in concentration, persistence, or pace prevent her from working, especially as the ALJ did not suggest that his decision relied on such a purported inconsistency. Nevertheless, the ALJ's decision to reject Dr. Loytsker-Borish's ultimate conclusion that Plaintiff could not complete a normal work-week is supported by the record, as no other physician indicated that her mental limitations prevent her from working a full-time schedule.[35] Moreover, the ALJ's opinion adequately considered Dr. Loytsker-Borish's opinions, which were largely incorporated into the RFC. The Court therefore overrules Plaintiff's objections and adopts the Magistrate Judge's recommendation on this issue.

## 2. Dr. Aksu's Evaluation

Dr. Kenan Aksu, D.O., is an orthopedic surgeon who began treating Plaintiff nine months after her onset date, and administered a series of epidural steroid injections for her back pain.[36] In May 2015, Dr. Aksu completed a "Treating Source Opinion Questionnaire."[37] In this questionnaire, Dr. Aksu noted that Plaintiff would need to take unscheduled 30-minute breaks every 30 minutes and that she was "unable to work due to pain."[38] Dr. Aksu also noted that Plaintiff's pain and symptoms would severely limit her ability to work by affecting her attention

---

[33] R&R [Doc. No. 12] at 12-13.

[34] Pl.'s Obj. to R&R [Doc. No. 13] at 2.

[35] *See* R. 24-25.

[36] R&R [Doc. No. 12] at 14 (citing R. 359).

[37] R. 402-05, 410-13.

[38] R. 403-04, 411-12.

and concentration and her ability to stand or walk continuously, lift objects, use her arm or fingers, and stoop or crouch.[39] The vocational expert stated that the need for frequent breaks would result in "termination or un-employability in competitive work."[40]

The ALJ gave Dr. Aksu's opinions "little weight." In explaining this assessment, the ALJ first confused opinions in the record, improperly attributing the opinion that Plaintiff would need frequent breaks to Nicole Podjed, PA-C, and asserting that this opinion, "although it is to be considered … is from a non-acceptable medical source."[41] However, as noted by the R&R, the parties appear to agree that this opinion, which was provided in a form appearing twice on the record, came from Dr. Aksu, Plaintiff's treating physician.[42]

The ALJ also provided that Dr. Aksu's opinions were "not consistent with the medical evidence of record,"[43] and pointed to two particular pieces of evidence for support: (1) Plaintiff's "minimal and effective" treatment for pain and symptoms "with Ibuprofen mostly taken for pain," and (2) the findings of negative straight leg raising which are "inconsistent" with her alleged "limits on sitting 30 minutes."[44] Not only did the ALJ fail to adequately explain how this evidence provides a basis for rejecting Dr. Aksu's opinion that Plaintiff requires frequent breaks, but he also glossed over the extensiveness of Plaintiff's treatment and ignores medical assessments that run counter to his conclusions relating to her back pain.

---

[39] R. 402-05, 410-13.

[40] R. 70.

[41] R. 25.

[42] R&R [Doc. No. 12] at 14; Pl. Br. in Supp. of Review [Doc. No. 6] at 8, Def. Resp. to Req. for Review [Doc. No. 7] at 9-10.

[43] R. 25.

[44] *Id.*

9

First, in describing Plaintiff's treatment for pain and symptoms as "minimal and effective," and largely treated with ibuprofen, the ALJ misrepresented the record of her extensive treatment. Contrary to the ALJ's contention that Plaintiff "mostly" takes ibuprofen for her pain, she receives epidural injections for her back pain every few months and has taken medications including Suboxone, Celebrex, and Flexeril;[45] she takes ibuprofen for headaches.[46] Moreover, the ALJ minimized the epidural injections in a separate part of the decision, describing the injections as "limited and effective" treatment and noting that there has been no discussion of surgery. As the R&R correctly notes, epidural steroid injections are more than minimal treatment and Plaintiff herself testified that this treatment "[did not] reduce the pain too much" and the relief provided was "limited."[47] In 2014, she asserted that she was in a lot of pain despite treatment, and she was hoping "to return to her previous regimen of Vicodin."[48]

Second, although the ALJ concluded that the limits on sitting for more than 30 minutes are "inconsistent with objective findings of negative straight leg raising," he did not cite to any relationship between the negative results of such a test and Dr. Aksu's prescribed limitations regarding sitting and standing. While the ALJ is not required to undertake an "exhaustive discussion of all the evidence," the Court is unable to discern whether this asserted inconsistency is supported by substantial evidence.[49] The ALJ also discussed other "objective medical evidence" earlier in his decision—namely, the MRIs and CT scans of Plaintiff's lumbar and cervical spine—yet his discussion here "ignor[es] medical assessments that ran counter to h[is]

---

[45] R. 43, 333, 350-354, 402.

[46] R. 43, 60.

[47] R. 43-44.

[48] R. 326.

[49] *See Hernandez v. Comm'r of Social Sec.*, 89 Fed. App'x 771, 773–74 (3d Cir. 2004).

finding."[50] For example, he mentioned the CT of her cervical spine from 2011 which revealed "at most moderate degenerative disc disease" and he characterized an MRI of the cervical spine from December 2013 as "reveal[ing] no more than mild-moderate changes at several levels since a CT in November 2012."[51] Yet, he ignored the conclusion that the MRI from December 2013 revealed "multilevel degenerative change," and "moderately severe left and severe right neuroforaminal stenosis."[52] The ALJ also glossed over Plaintiff's fibromyalgia, mischaracterizing a finding that she was positive for all trigger points on the torso by describing it as a finding that she had only "12/18 tender points on the torso."[53] He also ignored a more recent finding that, out of all 18 trigger points, 16 were positive, and she had "multiple scattered muscular and axial tender points throughout the thoracic and lumbar spine."[54] The ALJ need not make reference to every relevant note in the record, but the ALJ may not "cherry-pick" results that support his conclusion and ignore those that do not.[55]

Moreover, it is not clear how the limitations that the ALJ did credit are inconsistent with Plaintiff's purported need for frequent unscheduled breaks. In explaining his rejection of Dr. Aksu's opinion that she needs frequent breaks, the ALJ appears to have downplayed her treatment and back pain, while simultaneously crediting her "pain from her back, neck, and fibromyalgia that limit her to sedentary work."[56] Nowhere did the ALJ clarify why Plaintiff's pain limits her ability to stand and walk, but not her ability to sit for extended periods. While

---

[50] *Rios v. Commissioner of Social Sec.*, 444 F. App'x 532, 535 (3d Cir. 2011).

[51] R. 23-24.

[52] R. 387.

[53] R. 24, 293.

[54] R. 326.

[55] *See Rivera v. Astrue*, 9 F. Supp. 3d 495, 505 (E.D. Pa. 2014).

[56] R. 25.

Plaintiff's purported need to take frequent breaks may be inconsistent with the medical evidence, the Court cannot regard the ALJ's inferences in this regard as being supported by substantial evidence, absent an explanation of the connection between her need for breaks and her diagnoses.[57]

In sum, the ALJ minimized Plaintiff's treatment by focusing on her use of ibuprofen rather than epidural injections, cherry-picked test results that support his ultimate conclusion, and failed to explain how the impairments that he does credit are inconsistent with her alleged need for unscheduled breaks. Accordingly, the ALJ's rejection of Dr. Aksu's opinion is not supported by substantial evidence. The Court will sustain the objections to the R&R and remand for evaluation of whether Plaintiff's physical impairments, and in particular, her alleged limitations in sitting for extended periods, limit her ability to maintain employment.[58]

### B. Plaintiff's Testimony and Lay Witness Statements

The ALJ gave Plaintiff's testimony "limited weight" after finding that her "statements concerning the intensity, persistence, and limiting effects" of her symptoms were "not entirely credible."[59] According to the ALJ, "the medical evidence and treatment history do not support

---

[57] *See Bailey v. Apfel*, No. 97–8089, 1998 WL 401629, *5 (E.D. Pa. 1998) (finding that an ALJ's inference that diabetes did not impact the plaintiff's work related activities based on a doctor's failure to complete a medical source statement as to claimant's ability to perform work related activities was not reasonable, because the ALJ did not explain "what if any causal connection exists between this doctor's refusal to fill out a form and the limitations on [the plaintiff's] work related ability.").

[58] The R&R found that the ALJ's rejection of Dr. Aksu's opinion was supported by substantial evidence by relying on "[t]he objective testing, namely MRIs of the lumbar and cervical spine in December 2013 [which] showed mild to moderate degenerative changes" and Plaintiff's daily activities, including her "ability to prepare simple meals, drive, and shop during the relevant time." R&R [Doc. No. 12] 16-17. However, these were not the reasons cited by the ALJ in rejecting Dr. Aksu's opinion. As previously explained, the ALJ did describe the results of several MRIs and CT scans within his decision, but never explained how these results, which reveal both positive and negative assessments of Plaintiff's condition, relate to her ability to sit without breaks for long periods of time. Plaintiff's daily activities of preparing simple meals, driving, and shopping, were not a basis for the ALJ's ruling and in any event do not appear to conflict with the limitations assessed by Dr. Aksu.

[59] R. 23.

the severity of the claimant's allegations."[60] Plaintiff contends that the ALJ rejected her testimony without good reason or explanation. The Court agrees.

As previously stated, the ALJ minimized her treatment and cherry-picked from the medical records relating to her back pain. The ALJ's decision, which consists largely of summaries of a selection of medical evidence in the record, lacks any explanation as to how they conflict with Plaintiff's allegations of her pain and symptoms. For example, Plaintiff testified that she cannot sit for more than 10 to 15 minutes at a time,[61] and just as the rejection of Dr. Aksu's opinion relating to her inability to sit for extended periods constituted impermissible speculation, so too was the ALJ's rejection of Plaintiff's testimony on the same subject.[62]

Plaintiff also specifically objects to the ALJ's treatment of her testimony relating to her weekly headaches that last all day and require her to lie down in a dark room.[63] The ALJ found that the "frequency, duration and intensity of the claimant's headaches do not impact her ability to perform work activity."[64] In support, the ALJ only pointed to the medical records' indication that her headaches only occur once per week, and that the CT of her head in 2011 was negative. However, that her headaches occur only once per week, which Plaintiff herself asserted in her testimony, does not undermine their severity. Nor does the 2011 CT scan of her head, which occurred before Plaintiff was in a car accident, indicate that her headaches are not debilitating, especially without any explanation by the ALJ or a medical expert as to how this test relates to

---

[60] *Id.*

[61] R. 50.

[62] *See Morder v. Colvin*, 216 F. Supp. 3d 516, 529 (M.D. Pa. 2016).

[63] *See* R. 60.

[64] R. 23.

13

headaches.[65] Moreover, the opinion of her long-term treating physician, Brian Pierson, which the ALJ did not discuss, suggests that her headaches are severe; he diagnosed her with post-concussion syndrome, tension headache, psychogenic headache, and migraine with aura, and he indicated that her headaches are accompanied by nausea and are usually preceded by a visual aura.[66]

Finally, the ALJ considered the lay witness statements, which raised many of the same concerns as Plaintiff's testimony. The R&R determined that "despite the failure of the ALJ to specifically state whether he thought these statements were credible, the ALJ satisfied his duty of providing substantial evidence for his decision."[67] This Court disagrees. The ALJ explicitly noted that these letters allege that Plaintiff is not able to complete many daily activities "and requires rest due to her chronic pain," and, as previously stated, the ALJ did not explain its rejection of Plaintiff's need for frequent unscheduled breaks.

Accordingly, without adequate explanation for the ALJ's decision to give "limited weight" to the testimony and witness statements regarding the severity of her symptoms, remand is necessary to determine whether Plaintiff's physical impairments limit her ability to work.

V.  **CONCLUSION**

For the foregoing reasons, this Court sustains Plaintiff's objection to the R&R in part, finding that the ALJ failed to adequately explain the rejection of Dr. Aksu's opinion, Plaintiff's testimony, and the lay witness statements. The Court overrules Plaintiff's objections to the ALJ's

---

[65] Notably, the physician who conducted this CT scan noted that "[i]f there is a persistence of symptoms, then further work up and follow up may be done." R. 227.

[66] R. 375.

[67] R&R [Doc. No. 12] at 21.

14

treatment of Dr. Loytsker-Borish's opinion. The Court grants Plaintiff's request for review, and remands for further consideration pursuant to 42 U.S.C. § 405(g).